IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EARTHLINK, INC., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:02-CV-1921-JOF |
| LOG ON AMERICA, INC., : | |
| DAVID R. PAOLO, and : | |
| JOHN DOES 1-10, : | |
| : | |
| Defendants. : | |

**OPINION AND ORDER**

This matter is before the court on Plaintiff's motion for summary judgment against David R. Paolo [37-1].

**I.   Background**

   **A.   Procedural History**

Plaintiff EarthLink, Inc., filed suit against Defendants, Log On America, Inc. ("LOA"); David R. Paolo; and John Does 1-10, on July 11, 2002, alleging various fraud, RICO, breach of contract and related causes of action. The court has discussed in previous orders the procedural history of the case. To summarize the relevant points now, the court struck Defendant Paolo's answer and instructed Plaintiff to file a motion for default judgment. Plaintiff filed a motion for default judgment on January 25, 2006, but the court requested

more information, and Plaintiff filed the instant a motion for summary judgment on April 21, 2006.

Plaintiff seeks summary judgment on counts (8) slander, (9) slander per se, (10) libel per quod, (11) libel per se, (18) attorney's fees pursuant to O.C.G.A. § 13-6-11, and (19) punitive damages under O.C.G.A. § 51-12-51, of its complaint and requests damages in the amount of $226,952.00, punitive damages of at least $225,000, and attorneys' fees and costs in an amount to be determined following the grant of summary judgment.

**B.   Facts**

The facts are drawn from Plaintiff's unopposed statement of material undisputed facts. LOA was an internet service provider. David Paolo was President, Chairman, Chief Executive Officer, and founder of LOA. Plaintiff and LOA entered into a Subscriber Agreement contract on February 14, 2002, whereby EarthLink acquired LOA's residential dial-up subscribers. *See* Cmplt., ¶ 18. EarthLink paid a certain sum of money per transferred subscriber who met certain conditions. *Id.*, ¶ 20. Under the Agreement, EarthLink was also to make three separate payments to LOA on the condition of LOA and EarthLink taking certain actions. *Id.*, ¶ 26. The Agreement also provided that neither side was to issue unilateral press releases concerning the Agreement. *Id.*, ¶ 32.

EarthLink made the initial payment on schedule, but LOA began to complain about the schedule of payments. *Id.*, ¶¶ 33, 35. EarthLink agreed to accelerate portions of the final payment and made other prepayments. *Id.*, ¶¶ 37, 38. EarthLink undertook these adjustments

AO 72A
(Rev.8/82)

reserving its rights under the Agreement such that there was no modification or waiver of any obligations under the Agreement. *Id.*, ¶ 39. EarthLink has performed all of its obligations under the Agreement and is not in breach of the Agreement. *Id.*, ¶ 40.

On July 2, 2002, Defendant Paolo caused LOA to issue a press release accusing EarthLink of breaching the Subscriber Agreement by failing to make required payments. *Id.*, ¶ 43; Bryant Aff., ¶ 7. In this press release, LOA stated that it intended to "unwind" the Subscriber transition. *Id.*, ¶ 43. On July 6, 2002, Defendant Paolo sent an e-mail to most of the subscribers whom EarthLink had paid for and acquired under the Agreement. *Id.*, ¶ 44(b). He accused EarthLink of improper conduct and told the subscribers he was trying to protect them by seizing control of their accounts from EarthLink. *Id.* Defendant Paolo told the subscribers to seek refunds from EarthLink. *Id.*

Defendant Paolo caused LOA to issue another press release on July 8, 2002, which alleged that EarthLink failed to make payments under the Agreement and LOA was seizing subscribers assigned to EarthLink under the Agreement. *Id.*, ¶ 45; Bryant Aff., ¶ 8. These accusations were false. *Id.* On July 9, 2002, Defendant Paolo caused LOA to begin a telemarketing campaign against EarthLink which involved LOA calling subscribers and urging them to cancel their service with EarthLink, to demand refunds from EarthLink, and to return as customers to LOA. *Id.*, ¶ 46; Bryant Aff., ¶ 9. Defendant Paolo also caused LOA to block all incoming e-mail from the EarthLink or Mindspring domains. *Id.*, ¶ 47; Bryant Aff., ¶ 10.

As a result, 13,000 subscribers were unable to receive e-mails sent through the EarthLink system. *Id.*

Defendant Paolo undertook these actions in an intentional and malicious manner. *Id.*, ¶¶ 105, 110, 115, and 120.  Due to Defendant Paolo's false and defamatory allegations, Plaintiff has suffered severe and irreparable harm. *Id.*, ¶¶ 48, 49.  Plaintiff has lost subscribers as a result of Defendant Paolo's actions. *Id.*  EarthLink's business reputation has suffered because of Defendant Paolo's public allegations. *Id.*  EarthLink has suffered injury to its name, reputation and profession, and has been exposed to public hatred, contempt, ridicule, and other special damages. *Id.*, ¶¶ 103, 108, 113, and 188.

## II.   Discussion

### A.   Motion for Default Judgment

The court may grant default judgment on those claims brought by Plaintiff that are legally sufficient and supported by well-pleaded allegations. *McCoy v. Johnson*, 176 F.R.D. 676, 679 (N.D. Ga. 1997) (Forrester, J.).  By its default, Defendant "admits the plaintiff's well-pleaded allegations of fact." *See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).  However, simply because Defendant is in default does not mean that a default judgment is warranted. *Id.* at 1206.  Instead, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Id.*  "The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law. . . . [A] default is not treated as an absolute confession by the [defendant] of [its] liability and of the plaintiff's right

to recover." *Id.* Thus, the court must determine whether the well-pleaded allegations in the complaint deemed admitted by Defendant are sufficient to establish both Defendant's liability and the amount of damages such that Plaintiff's motion for default judgment must be granted.

Furthermore, a "judgment by default may not be entered without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979); *see also* Fed. R. Civ. P. 55(b); *Patray v. Northwest Publ'g, Inc.*, 931 F. Supp. 865, 869 (S.D. Ga. 1996). Morever, although a party in default admits the well-pleaded allegations of the complaint against it, the claimant "cannot satisfy the certainty amount simply by requesting a specific amount. He must also establish that the amount is reasonable under the circumstances." *Patray*, 931 F. Supp. at 869. Therefore, in order to grant the instant motion for default judgment with respect to the issue of damages, this court must find that the amount of damages is liquidated or can be reduced to a sum certain.

### B.     Slander and Slander Per Se

In Georgia, slander is defined *inter alia* as (1) imputing to another a crime punishable by law, (3) making charges against another concerning his trade, office, or profession, and (4) uttering any kind of disparaging words from which special damages would flow naturally. *See* O.C.G.A. § 51-5-4(a). The third category, slander per se, is considered injurious on its face, while the fourth requires a showing of special damages. *See id.* To prove slander per se, a plaintiff must show the statement was (1) false, (2) malicious, (3) published, and (4) is not

privileged. *See Bartholomew v. AGL Resources, Inc.*, 361 F.3d 1333 (11th Cir. 2004); *McClesky v. The Home Depot*, 272 Ga. App. 469 (2005); *Williams v. Trust Co. of Georgia*, 140 Ga. App. 49 (1976).

As recited by the court above, Plaintiff has alleged that Defendant Paolo published false statements through press releases and e-mails to numerous customers. Plaintiff also avers that Defendant Paolo's actions were taken with malice. Plaintiff alleged in its complaint that Defendant Paolo's actions resulted in damage to its name, reputation, and profession and that Plaintiff suffered special damages. For these reasons, the court GRANTS Plaintiff's motion for summary judgment as to the slander and slander per se claims.

### C.    Libel Per Quod and Libel Per Se

Libel "is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." *See* O.C.G.A. § 51-5-1(a). As with slander, the libel must be published. In a previous order, the court recognized that

> A written defamatory statement is actionable as either libel per se or libel per quod. Libel per se consists of a charge that one is guilty of a crime, dishonesty or immorality. Statements that tend to injure one in his trade or business also are libelous per se. Defamatory words which are actionable per se are those which are recognized as injurious on their face – without the aid of extrinsic proof. However, if the defamatory character of the words [does] not appear on their face but only become defamatory by the aid of extrinsic facts, they are not defamatory per se, but per quod, and are said to require innuendo.

6

Order, dated June 30, 2004, at 7 (quoting *Zarach v. Atlanta Claims Association*, 231 Ga. App. 685 (1998)).

As the court described above, Plaintiff alleges that Defendant Paolo made false, malicious statements in writing which injured Plaintiff's reputation and caused special damages. For these reasons, the court GRANTS Plaintiff's motion for summary judgment as to its libel per se and libel per quod claims.

### D.  Defamation Damages

Plaintiff provides the affidavit of Cliff Bryant, Director of Acquisitions for EarthLink, Inc. *See* Bryant Aff., ¶ 2. Mr. Bryant testified that due to the actions of Defendant Paolo, EarthLink suffered damages in the form of lost subscribers that it should have been able to retain after it made a contract with LOA to purchase rights to LOA's subscribers. *Id.*, ¶ 13. Specifically, EarthLink determined the number of subscribers it anticipated would be retained for each month based upon historic churn rates from fifty previous subscriber acquisitions. *Id.*, ¶ 14. EarthLink then compared the historic rates to the rates resulting from the LOA acquisition. *Id.* At the time of this acquisition, EarthLink had a net income of $14.79 per subscriber per month. *Id.* Per each month of a thirteen-month period, EarthLink took the number of subscribers it fell below the expected rate of retention and multiplied that figure by $14.79. *Id.* The total damages based on these calculations is $226,952.00. *Id.* The exact calculations themselves are set forth in Exhibit 1 to Mr. Bryant's affidavit.

AO 72A
(Rev.8/82)

The court finds that Mr. Bryant's affidavit adequately sets forth Plaintiff's damages to a sum certain. Therefore, the court DIRECTS Defendant Paolo to pay to Plaintiff a sum of $226,952.00 in defamation damages.

### E.     Punitive Damages

Punitive damages are available in a default judgment. *See Wilson Welding Service v. Partee*, 234 Ga. App. 619, 620 (1998), *overruled on other grounds*, *Shields v. Gish*, ____ Ga. ____ (2006); *Hill v. Johnson*, 210 Ga. App. 824 (1993). In conjunction with the requirements of O.C.G.A. § 51-12-5.1(b), Plaintiff alleges that Defendant Paolo acted with willful misconduct, malice, fraud, wantonness, oppression, and/or that entire want of care which raises a presumption of conscious indifference to the consequences of his actions. *See* Cmplt., ¶ 160. Defendant Paolo knew that his intentional actions would cause harm to EarthLink. *Id.*, ¶ 161. He intended that consequence so that he could benefit from financial gain at EarthLink's expense. *Id.* Plaintiff seeks an award of at least $225,000 in punitive damages.

The determination of "liability for punitive damages and the amount of punitive damages are two different things." *Wilson Welding Service*, 234 Ga. App. at 620 (declining to award punitive damages in default action where fraud was "de minimis"). Here, the court finds that a punitive damage award of $100,000 is appropriate.

### F.     Attorney's Fees

8

A court may award attorney's fees in a default judgment action. *See Fresh Floors, Inc. v. Forrest Cambridge Apartments, L.L.C.*, 257 Ga. App. 270 (2002). "Expenses of litigation generally are not allowed as part of damages; but where the plaintiff has specially pleaded and prayed for them, and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, litigation expenses may be allowed." *Id.* at 271.

Plaintiff alleges in its complaint that Defendant Paolo committed intentional bad acts with the express goal of injuring EarthLink. *See* Cmplt., ¶ 156. Defendant Paolo acted in bad faith to cause EarthLink unnecessary trouble and expense. *Id.* Therefore, the court finds that Plaintiff has established its entitlement to an award of attorney's fees pursuant to O.C.G.A. § 13-6-11. Plaintiff is DIRECTED to submit a petition for attorney's fees within twenty (20) days of the date of this order. The court expects that Plaintiff's petition will conform to the requirements set forth in *Norman v. Housing Authority*, 836 F.2d 1292 (11th Cir. 1988), and *ACLU v. Barnes*, 168 F.3d 423, 430 (11th Cir. 1999).

**III.   Conclusion**

The court GRANTS Plaintiff's motion for summary judgment against David R. Paolo [37-1]. Defendant Paolo is DIRECTED to pay to Plaintiff the amount of $226,952.00 in damages and $100,000 in punitive damages.

Plaintiff is DIRECTED to submit a petition for attorney's fees within twenty (20) days of the date of this order.

**IT IS SO ORDERED** this 30th day of June 2006.


                                            s/ J. Owen Forrester
                                            J. OWEN FORRESTER
                          SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)